O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THERESA QUINTANILLA,<br><br>          Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 14-8014-DFM<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Theresa Quintanilla appeals from the final decision of the Administrative Law Judge ("ALJ") denying her applications for Social Security benefits. The Court concludes that the ALJ's finding that Plaintiff did not meet or equal a listed impairment was supported by substantial evidence. The Court also concludes that the ALJ offered clear and convincing reasons for discrediting Plaintiff's credibility and properly considered the testimony of Plaintiff's mother. Accordingly, the ALJ's decision is affirmed and the matter is dismissed with prejudice.

///

I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for Disability Insurance and Supplemental Security Income benefits on October 24, 2011, alleging disability beginning September 23, 2011. Administrative Record ("AR") 149-73. The ALJ found that Plaintiff had the severe impairments of multiple sclerosis ("MS") and anxiety. Administrative Record ("AR") 12. The ALJ concluded that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economy which she could perform despite her impairments. AR 20-21.

II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in failing to: (1) consider whether Plaintiff's MS meets or equals Listing 11.09(C); (2) properly assess Plaintiff's credibility; and (3) properly consider the testimony and written statement of Plaintiff's mother. See Joint Stipulation ("JS") at 2.

III.

## DISCUSSION

**A.  The ALJ Properly Considered Whether Plaintiff's Impairments Met or Equaled a Listed Impairment**

  **1.  Applicable Law**

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1996). Thus, if the claimant's impairment

matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. § 416.920(d); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that she has an impairment that meets or equals a listed impairment. <u>Burch v. Barnhart</u>, 400 F.3d 676, 683 (9th Cir. 2005); <u>Zebley</u>, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for step three impairment determination). "To <u>meet</u> a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999). "To <u>equal</u> a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." <u>Id.</u> (quoting 20 C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." <u>Id.</u> at 1100; <u>see</u> 20 C.F.R. § 416.926.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (concluding that ALJ did not err in failing to state what evidence supported finding that claimant failed to meet or equal a listed impairment because four page, single-spaced "'evaluation of the evidence'" was "an adequate statement of the 'foundations on which the ultimate factual conclusions [were] based'"). An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." <u>See</u> <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006).

### 2. Listing 11.09(C)

Plaintiff contends that the ALJ erred by failing to explicitly consider whether her MS met or equaled Listing 11.09, the listing for multiple sclerosis. JS at 3-6. Listing 11.09 provides as follows:

> Multiple sclerosis. With:
>
> A. Disorganization of motor function as described in 11.04B; or
>
> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.09. Plaintiff does not argue that she meets subparagraph (A) or (B) of Listing 11.09, arguing only that "[t]he medical evidence supports MS with significant fatigue." JS at 3; see also id. ("Complaints of fatigue are prevalent throughout the record.").

The ALJ reviewed Plaintiff's medical records regarding her symptoms and treatment for MS, including her fatigue. See AR 16-19. Based on that review, he found that "claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing." AR 13. As noted above, the ALJ need not state why a claimant failed to satisfy every different section of the listings. See Gonzalez, 914 F.2d at 1200-01.

In this case, the Court finds that the ALJ committed no error in finding

that Plaintiff did not meet or equal a listing. Although Plaintiff contends that her MS satisfies the requirements for Listing 11.09, she never demonstrates how she meets the listing criteria. Plaintiff notes that she has been diagnosed with MS and cites to references in the medical record where she complained of fatigue. JS at 3, 8. However, in order to meet or equal Listing 11.09(C), Plaintiff must provide medically documented findings of "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." See 20 C.F.R., subpt. P, app. 1 § 11.09(C). No treating or examining physician ever determined that Plaintiff's fatigue satisfied this criteria, nor are there any such objective clinical or diagnostic findings in the record. Plaintiff's diagnosis of MS and reports of fatigue, without more, do not establish the necessary criteria for Listing 11.09(C).

Moreover, the medical record is not entirely clear that any fatigue was actually caused by Plaintiff's MS. For example, Plaintiff's treating physician noted on March 5, 2012, that Plaintiff's fatigue may have been increased by stressful personal circumstances, including a mother-in-law in a nursing facility with renal failure and a sister in drug rehabilitation. AR 377. In fact, Plaintiff testified that she was being referred to a rheumatologist and tested for lupus because her physicians did not know what exactly was causing her fatigue. AR 39.

When considering the record as a whole, it is clear that Plaintiff has not met her burden of showing that she meets or equals each of the required elements of Listing 11.09(C). See Bowen v. Yuckert, 482 U.S. 137, 145-152 (1987) (placing burden on claimant to produce evidence that his impairment meets a listing); see also Sullivan, 493 U.S. at 530 (noting that "[a]n

impairment that manifests only some of [the listed] criteria, no matter how severely, does not qualify"). The ALJ reviewed all of the medical evidence in detail and correctly found, at step three of the sequential analysis, that Plaintiff's impairments do not meet or equal any listed impairment. Plaintiff is therefore not entitled to relief on this claim of error.

B. **The ALJ Properly Assessed Plaintiff's Credibility**

At the hearing before the ALJ, Plaintiff testified that she stopped working in 2009 because the symptoms of her MS worsened with numbness and dragging in her legs; she had difficulty concentrating and focusing and could not handle work stress; her primary complaint was fatigue; she could not work a 40-hour week because she has vertigo and asthma that keeps her bedridden for a week at a time; she would miss approximately two days of work per month due to her vertigo; she had other symptoms such as tingling in her face, eyelid twitching, and slurred speech; and she could not handle a less stressful job because of her fatigue and vertigo. AR 31-51.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2013)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence

6

and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Id. (citations omitted).

Here, the ALJ provided several reasons for finding that Plaintiff was not fully credible, each of which is supported by substantial evidence in the record. First, Plaintiff testified that she was laid off from her job as a paralegal approximately two weeks after she told her employer she has MS. AR 31. The ALJ could properly consider that Plaintiff stopped working for reasons other than her impairment. See Bruton v. Massanari, 268 F.3d 824, 82 (9th Cir. 2001) (holding that ALJ properly considered the fact that the claimant stopped working because she was laid off, not because of a medical disability). Relatedly, Plaintiff testified that she was looking for work and had worked for an attorney on a part-time basis. AR 31. The ALJ could also consider the fact that Plaintiff had worked and sought work since she allegedly became disabled. See Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting that claimant's

allegation of debilitating illness belied in part by fact that claimant had sought out employment since alleged onset date); Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and conduct supported rejection of claimant's credibility).

Second, the ALJ properly considered Plaintiff's activities of daily living in assessing her credibility. The ALJ noted that, despite Plaintiff's complaints of debilitating pain, she was able to perform certain daily activities, such as doing some household chores, running errands, driving her daughter to and from school, preparing meals for herself and her family, independently handling her personal care, shopping, and doing some light cleaning and laundry. AR 15. While it is true that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), the extent of Plaintiff's activity here supports the ALJ's finding that Plaintiff's reports of the severity of her impairment were not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

Finally, the ALJ noted that Plaintiff's activities of daily living were inconsistent with her written statement that she has difficulty standing, walking, talking, seeing, remembering, concentrating, and understanding. AR 15 (citing AR 219). As noted above, an ALJ may properly consider any inconsistencies between a claimant's testimony and conduct. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

On appellate review, the Court does not reweigh the hearing evidence

regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604. It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony. Reversal is therefore not warranted on this basis.

### C. The ALJ Properly Considered the Testimony of Plaintiff's Mother

Plaintiff's mother, Helen Doherty, detailed her observations of Plaintiff's abilities and daily activities in oral testimony and a written statement. AR 52-54, 206-13. The ALJ rejected Doherty's statements for the following reasons: (1) she has a financial interest in Plaintiff receiving benefits because Doherty lives with Plaintiff; (2) she is not a medical doctor or other qualified expert, and therefore cannot give a qualified opinion as to Plaintiff's impairments or ability to perform work activity; and (3) her opinion largely mirrors Plaintiff's own testimony, which the ALJ found not fully credible. AR 15-16.

A lay witness can provide testimony about a claimant's symptoms and limitations. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

The first two reasons offered by the ALJ for discounting Doherty's

testimony are suspect. The Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship. See, e.g., Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999). Likewise, it is not appropriate to discount a lay witness's testimony just because the lay witness is not a medical professional; although an ALJ need not discuss "medical diagnoses" made by lay witnesses because they "are beyond the competence of lay witnesses and therefore do not constitute competent evidence," nevertheless "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen, 100 F.3d at 1467 (citations omitted).

      Where one or more of the ALJ's several reasons supporting an adverse credibility finding is invalid, the Court applies a harmless error standard. See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-1197 (9th Cir. 2004)). As long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. Batson, 359 F.3d at 1197; see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion").

      Here, even if the Court concludes that the ALJ should not have discounted Doherty's testimony for bias and because she is not a medical professional, an ALJ may reject lay witness testimony predicated upon reports of a claimant properly found not credible. See Molina v. Astrue, 674 F.3d 674, 1114 (9th Cir. 2012) (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (upholding ALJ's rejection of lay witness testimony

for same reasons that ALJ discounted claimant's similar testimony)). Here, the record shows that Plaintiff's mother's testimony largely mirrored Plaintiff's subjective complaints. Doherty's testimony and written report provide essentially the same information regarding Plaintiff's alleged symptoms and limitations as Plaintiff's testimony and does not provide any limitations beyond those which Plaintiff herself described. Compare AR 49-50 with AR 53-54. Thus, the Court finds that any error was harmless. Reversal is not warranted on this basis.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: November 19, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge